# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| NATALIE REIGHARD,<br><br>        Plaintiff,<br><br>   v.<br><br>CHIEF WAYNE LONGO, et al.,<br><br>        Defendants. | Case No. CV-09-350-N-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Before the Court is the defendants' motion for summary judgment. The Court heard oral argument on September 8, 2010, and took the motion under advisement. Following further review of the record, including a review of the video of the arrest, the Court finds that the motion should be granted in part and denied in part. For the reasons expressed below, the Court will grant summary judgment as to plaintiff Reighard's equal protection claim, but deny the motion as to her due process claim.

## FACTUAL BACKGROUND

At approximately 11:30 p.m. on August 6, 2008, Coeur d'Alene, Idaho

**Memorandum Decision & Order – page 1**

police officers Jared Reneau and Jeff Walther responded to a radio report regarding a potential DUI on North Ramsey Road in Coeur d'Alene. *See Affidavit of Reneau (docket no. 13-3)* at ¶ 6. Sergeant Eric Turrell had pulled over a passenger car that he witnessed driving erratically, drifting from lane to lane. *Id*. Officer Walther was in the process of training Officer Reneau and acting as his supervising officer at the time of the events in question. *See Affidavit of Walther (docket no. 13-4)* at ¶ 5.

Upon their arrival at the scene, Sergeant Turrell informed Officers Reneau and Walther that the driver, a young female, and her male passenger told him that they had been "fooling around" while she was driving. *See Affidavit of Reneau, supra,* at ¶ 8. The driver, later identified as the Plaintiff, Natalie Reighard, allegedly told Sergeant Turrell that she had just completed her shift at Azteca, a local restaurant, and had not been drinking alcohol. *Id*. Reighard later claimed she had actually spent the evening swimming with friends in Lake Coeur d'Alene. *See Affidavit of Reighard (docket no. 19)* at ¶ 3. Reighard was standing outside her vehicle, per Sergeant Turrell's directive, when Officers Reneau and Walther arrived. *See Affidavit of Reneau, supra,* at ¶ 8. Reighard was not wearing any clothing underneath her dress, claiming that she had been wearing a swimsuit

**Memorandum Decision & Order – page 2**

underneath earlier, but had removed it as it was wet from swimming in Lake Coeur d'Alene. *See Affidavit of Reighard, supra*, at ¶ 5.

Sergeant Turrell asked Officers Reneau and Walther to take over the investigation, ending his substantive participation in the events in question. *See Affidavit of Reneau, supra*, at ¶ 8-9. Based on the information conveyed to him by Sergeant Turrell, and out of listening range of Reighard, Officer Walther told Officer Reneau that reasons other than intoxication could account for Reighard's erratic driving. *See Affidavit of Walther, supra*, at ¶ 8. Officer Walther opined to Officer Reneau that perhaps "[Reighard's passenger] was getting his finger dirty . . . You need to check it out because it's possible they were just screwing around. That's kind of what she said." *Id.; see also, Video attached to Affidavit of Reneau, supra,* at 23:29:49.

Another Coeur d'Alene police officer, Eric Brumbaugh, also responded to the call. Officer Brumbaugh observed an open bottle of vodka lying in plain sight in the backseat of the vehicle, and relayed this information to Officer Reneau. Officer Brumbaugh subsequently interacted with Reighard's passenger and had no other role in the events in question. *See Affidavit of Reneau, supra*, at ¶ 10.

Officer Reneau commenced investigatory questioning of Reighard.

**Memorandum Decision & Order – page 3**

Reighard initially denied consuming any alcohol prior to being stopped, but subsequently admitted to consuming half a glass of wine at dinner with her parents earlier in the evening. *Id*. at ¶ 11. Reighard provided her date of birth and stated that she was 19 years old. *Id*. at ¶ 12.

Officer Reneau then informed Reighard that he was going to administer a standard field sobriety test ("FST") to determine if she had been driving under the influence of alcohol. *Id*. at ¶ 13. Officer Reneau asked Reighard if there existed any reason she might not be able to perform the FST, such as medications or physical limitations. *Id.* Reighard stated several times that she did not want to answer, or did not feel comfortable answering, Officer Reneau's questions. *Id.*

During the FST, Officer Reneau smelled alcohol on Reighard's breath. *Id.* at ¶ 14. Officer Reneau observed that Reighard's eyes were bloodshot, and that she had difficulty balancing as she attempted to stand on one leg and to walk in a straight line. *Id.* Officer Reneau observed that Reighard had a difficult time focusing and moving only her eyes during the horizontal nystagmus test. *Id.* Based on the totality of his observations and her admitted age of 19, Officer Reneau decided to arrest Reighard for driving under the influence of alcohol. *Id*. at ¶ 15. Officer Walther, observing the FST, noticed Reighard's

**Memorandum Decision & Order – page 4**

balancing difficulties and slurred speech and concurred with Officer Reneau's decision to arrest Reighard.  *See Affidavit of Walther, supra*, at ¶ 16-17.

Officer Reneau informed Reighard that she was under arrest and placed her in handcuffs.  *See Affidavit of Reneau, supra*, at ¶ 17.  Officer Reneau then walked Reighard, who did not resist, to the front of his police car.  *Id.*  Reighard claims that Officer Reneau told her several times to spread her legs "wider" as he was placing her in handcuffs.  *See Affidavit of Reighard, supra*, at ¶ 7.  Officer Reneau cannot, however, be heard saying "wider" in the video.  Officer Reneau told Reighard to "separate her feet" as he started to handcuff her, *see Video, supra*, at 23:51:51, and a short time later to "separate [her] feet just a little bit further."  *Id*. at 23:52:01.

Officer Reneau then conducted a "pat-down" search of Reighard, using his gloved hand.  *Id.* at 23:52:54-23:53:50.  The search lasted less than a minute, including two interruptions when Reighard attempted to pull away from Officer Reneau.  *Id*.  Reighard claims that Officer Reneau used his un-gloved, non-searching hand, which was behind her back, to reach under her dress and fondle her bare buttocks and vagina.  *See Affidavit of Reighard, supra*, at  ¶ 8; *see also, Deposition of Reighard* at p. 58 (*attached to Affidavit of Adams (docket no. 13-2)*).

**Memorandum Decision & Order – page 5**

Reighard protested to Officer Reneau: "Dude, are you kidding me!? Like, do you think you can do that!? Like, you just touched my vagina. That's not cool." *See Video, supra*, at 23:53:11-23:53:17. Officer Walther did not witness Officer Reneau touch Reighard in the manner of which she verbally complained. *See Affidavit of Walther, supra*, at ¶ 21.

Reighard was placed in the patrol car and transported to the Coeur d'Alene jail, at which time Officer Reneau administered a breathalyzer test. *See Affidavit of Reneau, supra,* at ¶ 16. Reighard's tests yielded blood-alcohol content readings of .026 and .025, in excess of the legal limit for the operator of a motor vehicle. *Id.*

On July 16, 2009, Reighard filed a civil Complaint, pursuant to 42 U.S.C. § 1983, against the City of Coeur d'Alene, Coeur d'Alene Police Chief Wayne Longo, and Officers Reneau, Walther, and Brumbaugh. *See Complaint (docket no. 1).* The Complaint alleges two claims for which monetary relief is sought: first, that the Officers, Chief Longo, and the City of Coeur d'Alene deprived Reighard of her constitutional rights of equal protection and due process, and second, that the Officers and City of Coeur d'Alene conspired to so deprive her of her constitutional rights.

## LEGAL STANDARD

One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id.* at 327. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001)(en banc). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson,* 212 F.3d 528, 532 (9th Cir.2000).

This shifts the burden to the non-moving party to produce evidence

**Memorandum Decision & Order – page 7**

sufficient to support a jury verdict in her favor. *Id.* at 256-57. The non-moving party must go beyond the pleadings and show "by her affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine issue of material fact exists. *Celotex,* 477 U.S. at 324.

The evidence must be viewed in the light most favorable to the non-moving party, *id.* at 255, and the Court must not make credibility findings. *Id.* Direct testimony of the non-movant must be believed, however implausible. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999). On the other hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988). And a court is not obligated to take the non-movant's version of events as true when the account is blatantly contradicted by video evidence. *Scott v. Harris,* 550 U.S. 372, 378-81 (2007).

To establish a prima facie case under 42 U.S.C. § 1983, a plaintiff must demonstrate that (1) the action complained of occurred under color of state law, and (2) the action resulted in a deprivation of a constitutional right or a federal statutory right. *McDade v. West*, 223 F.3d 1135, 1139 (9th Cir. 2000).

# ANALYSIS

**<u>Due Process</u>**

Sexual misconduct by a police officer toward a citizen generally is analyzed under the Fourteenth Amendment; sexual harassment by a police officer of a criminal suspect during a continuing seizure is analyzed under the Fourth Amendment. *Fontana v. Haskins*, 262 F.3d 871, 882 (9th Cir. 2001). When police officers make a lawful arrest, a search of the person is reasonable under the Fourth Amendment. *United States v. Ruckes*, 586 F.3d 713, 717 (9th Cir. 2009). When considering the reasonableness of a search under the Fourth Amendment, the Court must consider "a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (internal quotation omitted).

Reighard does not dispute that her arrest or the exterior search of her person was reasonable. She claims, however, that Officer Reneau used his un-gloved, non-searching hand, which was behind her back, to reach under her dress and fondle her bare buttocks and vagina. Reighard believes this alleged action transformed Officer Reneau's search from reasonable to unreasonable, though she

**Memorandum Decision & Order – page 9**

cites no case law detailing the point at which a permissible search incident to a lawful arrest becomes unreasonable. Indeed, searches as extensive as strip searches and body cavity searches have been held reasonable under the Fourth Amendment, albeit with individualized, reasonable suspicion that the search will be fruitful. *See, e.g., Ward v. San Diego County*, 791 F.2d 1329, 1332 (9th Cir. 1986) ("[A] strip search could be justified if the arresting officer had at least a reasonable suspicion that the arrestee possessed a weapon or contraband."); *Fuller v. M.G. Jewelry*, 950 F.2d 1437, 1446 (9th Cir. 1991) ("[A] visual body cavity search of a particular detainee for contraband or weapons may still be justified where a police officer has reasonable suspicion to conduct such a search.").

The Court finds that there exists a genuine issue of material fact regarding whether Officer Reneau touched Reighard in the manner she alleges. The hand that Officer Reneau placed on Reighard's wrists, handcuffed behind her back, is not visible to the camera during the search, and Officer Reneau's body movements are not inconsistent with her allegations. The video capturing the events in question, though illuminating, is not so conclusive as to "blatantly contradict" Reighard's allegations. *See Scott,* 550 U.S. at 378-81. Furthermore, taking Reighard's allegations as true, the Court cannot find that such a search would be

**Memorandum Decision & Order – page 10**

reasonable as a matter of law under the Fourth Amendment, which protects an arrestee's privacy interests and thus bars intrusions into the body "which are not justified in the circumstances, or which are made in an improper manner." *Schmerber v. California*, 384 U.S. 757, 768 (1966).  The Court therefore denies the defendants' motion regarding Reighard's due process claim.

**Equal Protection**

Reighard's equal protection allegation states as follows:  "Defendants, acting under color of state law, discriminated against Plaintiff because of her gender by sexually harassing and assaulting her . . . and thus deprived Jones [sic] of her right to equal protection of law." *See Complaint, supra,* at ¶ 17.  In her abbreviated response brief, Reighard focuses on her due process claim and fails to elaborate on her equal protection claim.  *See Response Brief (docket no. 18)* at p. 2.

The equal protection clause of the Fourteenth Amendment confers a "federal constitutional right to be free from gender discrimination" at the hands of governmental actors.  *Davis v. Passman*, 442 U.S. 228, 234-35 (1979).  In order to state a claim for violation of the Equal Protection clause of the Fourteenth Amendment, a plaintiff must allege that the individual defendants, acting under color of state law, "acted in a discriminatory manner and that the discrimination was intentional." *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736, 740 (9th Cir.

2000) (citation omitted). A "long line of Supreme Court cases make clear that the Equal Protection clause requires proof of discriminatory intent or motive." *Navarro v. Block*, 72 F.3d 712, 716 (9th Cir. 1995) (citations omitted).

The first prong of *Reese* requires a showing that the defendants acted in a discriminatory manner. Reighard does not contend that the stop of her vehicle or her subsequent arrest were the result of discrimination. Rather, Reighard contends that the Defendants acted in a discriminatory manner by "harassing and assaulting her." Allegations of sexual assault during a continuing seizure implicate Fourth Amendment due process rights, not Fourteenth Amendment equal protection rights. *Fontana,* 262 F.3d at 882.

The Court therefore turns to Reighard's claim that she was discriminated against in the form of verbal harassment, and the creation of a harassing environment through verbal comments made by Sergeant Turrell and Officer Walther. Sergeant Turrell informed Officers Walther and Reneau that Reighard's skirt was "hiked up" and that she and her passenger had been "fooling around." Based on these observations, Officer Walther stated to Officer Reneau that perhaps Reighard's passenger was getting "his finger dirty." Though somewhat crude, this statement was made in the police vehicle where Reighard could not hear it. Moreover, there was a possible training component to the comment, since Officer

Walther, as Officer Reneau's training officer, was informing him of possible explanations for Reighard's erratic driving, other than intoxication. Such isolated stray remarks, made in a training setting outside the hearing of the plaintiff, do not rise to the level of a constitutional violation. *See, Merrick v. Farmers Ins. Group*, 892 F.2d 1434, 1438 (9th Cir. 1990) (affirming summary judgment in part on basis that "stray remarks are insufficient to establish discrimination").

The second prong of *Reese* requires that Reighard show discriminatory intent on the part of the defendants. Reighard has not provided any evidence that the Officers intended to interact with her any differently than they would a male suspect.

Officer Walther's comment was made out of earshot of Reighard, and is insufficient as a matter of law to sustain an equal protection claim. Reighard has not provided requisite evidence of discriminatory intent or motive on the part of the defendants. Accordingly, the defendants' motion is granted regarding Reighard's equal protection claim.

**Qualified Immunity**

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would

**Memorandum Decision & Order – page 13**

have known." *Pearson v. Callahan*, 129 S.Ct. 808, 815 (2009) (internal quotation marks omitted). A police officer is not entitled to qualified immunity if: (1) the facts show that the officer's conduct violated a plaintiff's constitutional rights; and (2) those rights were clearly established at the time of the alleged violation. *Id.* at 816.

As discussed above, there exists a genuine issue of material fact regarding whether Officer Reneau touched Reighard in an unreasonable manner while conducting the search. The defendants do not contend that they would be entitled to qualified immunity if Reighard was, in fact, touched as she alleges. Accordingly, the defendants' motion regarding the applicability of qualified immunity is denied.

## IV. CONCLUSIONS

The Court finds that there exists a genuine issue of material fact regarding whether Officer Reneau touched Reighard in the manner she alleges. Taking Reighard's allegations as true, the Court cannot conclude as a matter of law that such a search would be reasonable under the Fourth Amendment.

Regarding Reighard's equal protection claim, the court concludes that, construing the facts in Reighard's favor, the defendants are nevertheless entitled to judgment as a matter of law.

# ORDER

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that the defendants' motion for summary judgment (docket no. 13) is GRANTED IN PART AND DENIED IN PART. It is granted to the extent it seeks summary judgment on plaintiff's equal protection claim, and is denied in all other respects.

DATED: **September 16, 2010**

_____
Honorable B. Lynn Winmill
Chief U. S. District Judge